Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2009  Decided November 24, 2009

No. 08-1225

STATE OF NORTH CAROLINA,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

ENVIRONMENTAL PROTECTION DIVISION,
DEPARTMENT OF NATURAL RESOURCES, STATE OF GEORGIA
AND GEORGIA COALITION FOR
SOUND ENVIRONMENTAL POLICY, INC.,
INTERVENORS

———

On Petition for Review of a Final Action
of the Environmental Protection Agency

———

*Marc D. Bernstein*, Special Deputy Attorney General, North Carolina Department of Justice, argued the cause for petitioner. With him on the briefs were *Roy Cooper*, Attorney General, and

*James C. Gulick*, Senior Deputy Attorney General, and *Allen Jernigan*, Special Deputy Attorney General.

*Perry M. Rosen*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *John C. Cruden*, Acting Assistant Attorney General, and *Sonja Rodman*, Counsel, U.S. Environmental Protection Agency. *David S. Gualtieri*, Attorney, U.S. Department of Justice, entered an appearance.

*Margaret Claiborne Campbell* argued the cause for intervenor Georgia Coalition for Sound Environmental Policy, Inc. in support of respondent. With her on the brief was *Byron W. Kirkpatrick*.

*Thurbert E. Baker*, Attorney General, and *John E. Hennelly* and *Diane L. DeShazo*, Senior Assistant Attorneys General, were on the brief for intervenor Georgia Environmental Protection Division, Department of Natural Resources, State of Georgia.

Before: ROGERS, GARLAND and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The State of North Carolina petitions for review of the final rule of the Environmental Protection Agency removing the northern part of the State of Georgia from EPA's regulations under its national ambient air quality standard ("NAAQS") for ozone measured during a one-hour period. *See* Petition for Reconsideration and Withdrawal of Findings of Significant Contribution and Rulemaking for Georgia for Purposes of Reducing Ozone Interstate Transport, 73 Fed. Reg. 21,528 (Apr. 22, 2008) ("Withdrawal Rule"). In 1998 EPA called upon several states to revise their state

implementation plans ("SIPs") for attaining the NAAQS for ozone by reducing emissions of oxides of nitrogen ("$NO_x$"), a precursor of ozone. *See* Finding of Significant Contribution and Rulemaking for Certain States in the Ozone Transport Assessment Group Region for the Purposes of Reducing Regional Transport of Ozone, 63 Fed. Reg. 57,356 (Oct. 27, 1998) ("$NO_x$ SIP Call"). Following the remand in *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000), *cert. denied*, 532 U.S. 904 (2001), EPA promulgated a rule that included only the northern portion of Geogia in the $NO_x$ SIP Call under the one-hour ozone standard. *See* Interstate Ozone Transport: Response to Court Decisions on the $NO_x$ SIP Call, $NO_x$ SIP Call Technical Amendments, and Section 126 Rules, 69 Fed. Reg. 21,604 (Apr. 21, 2004) ("Remand Rule"). Georgia's inclusion was based on EPA's findings in the $NO_x$ SIP Call that emissions from Georgia were significantly contributing to non-attainment of the one-hour ozone NAAQS in Birmingham, Alabama and Memphis, Tennessee. *See* Withdrawal Rule, 73 Fed. Reg. at 21,530.

Upon the petition of an industry coalition, an intervenor here, EPA reconsidered its inclusion of Georgia in light of its determinations that recently Birmingham, and earlier Memphis, had attained the one-hour ozone standard. *See id.* North Carolina now challenges the Withdrawal Rule as contrary to EPA policy requiring states' adherence to $NO_x$ emissions budgets based on the one-hour ozone standard after the repeal of the one-hour standard, as nonconformance with the mandate in *Michigan v. EPA*, and as disparate treatment of Georgia without lawful justification. We do not reach the merits of these contentions because we conclude that North Carolina lacks standing, specifically that North Carolina failed to show redressability.

**I.**

Nitrogen oxides ($NO_x$) emitted into the air react to form ozone ($O_3$), a pollutant with harmful health and environmental effects. Ozone is an interstate issue because $NO_x$ emissions and ozone cross into downwind states. *See* $NO_x$ SIP Call, 63 Fed. Reg. at 57,359. In 1979, EPA established the NAAQS for ozone at 0.120 ppm (parts per million) measured over a one-hour period ("the one-hour standard"). *Michigan v. EPA*, 213 F.3d at 670. In 1997, EPA lowered the ozone NAAQS to 0.08 ppm measured over an eight-hour period ("the eight-hour standard"), *id.*, but this standard was stayed in 2000 and was not before the court in *Michigan v. EPA*, *id.* at 671. In 2004, EPA transitioned from the one-hour standard to the eight-hour standard.[1] In 2008, EPA lowered the eight-hour ozone NAAQS to 0.075 ppm.

Meanwhile, in 1998, EPA called for revisions to the SIPs of several upwind states (the "$NO_x$ SIP Call"). EPA found that $NO_x$ emissions in Georgia significantly contributed (1) to nonattainment of the one-hour ozone standard in Birmingham and Memphis, and (2) to nonattainment of the eight-hour ozone standard in North Carolina. EPA's 2000 stay of the eight-hour standard "remove[d] the 8-hour findings as a basis for the SIP call." *Michigan v. EPA*, 213 F.3d at 671.

---

[1] In 2005, EPA also began regulating $NO_x$ emissions using the eight-hour ozone standard under the Clean Air Interstate Rule ("CAIR"). *See* Rule To Reduce Interstate Transport of Fine Particulate Matter and Ozone (Clean Air Interstate Rule); Revisions to Acid Rain Program; Revisions to the $NO_x$ SIP Call, 70 Fed. Reg. 25,162 (May 12, 2005); *see also North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008), *remanded without vacatur*, 550 F.3d 1176 (D.C. Cir. 2008).

On petition for review of the $NO_x$ SIP Call, the court held in *Michigan v. EPA* that "the record does not support . . . creating $NO_x$ [emissions] budgets based on the entire emissions of Missouri or Georgia," because only the "fine grid" modeling used for northern Georgia and eastern Missouri, and not the "coarse grid" modeling used for other parts of those states, showed emissions contributing to downwind pollution. *Michigan v. EPA*, 213 F.3d at 669, 683. On remand, EPA revised the $NO_x$ SIP Call by calculating $NO_x$ emissions budgets based only on areas of Georgia and Missouri whose emissions had been modeled for the $NO_x$ SIP Call with the fine-grid technique. *See* Remand Rule, 69 Fed. Reg. at 21,624. The Remand Rule was published April 21, 2004, with an effective date of June 21, 2004. However, EPA had found, effective April 12, 2004, that Birmingham (and earlier, Memphis) had attained the one-hour ozone standard. In response to a petition from intervenor Georgia Coalition for Sound Environmental Policy (a group of businesses and companies, hereinafter "industry"), EPA stayed the Remand Rule with respect to Georgia during the notice and comment proceedings for industry's petition to reconsider Georgia's inclusion in the $NO_x$ SIP Call, in light of EPA's Birmingham and Memphis findings. In 2008, EPA finalized the Withdrawal Rule, removing Georgia from the one-hour $NO_x$ SIP Call.

In petitioning for review, North Carolina claims that $NO_x$ emissions from electric generating units ("EGUs") in northern Georgia are significantly contributing to North Carolina's inability to attain the NAAQS under the eight-hour standard due to Georgia's non-inclusion in the one-hour $NO_x$ SIP Call, and that North Carolina's injury can be remedied by vacating the Withdrawal Rule in part. Specifically, North Carolina seeks partial vacatur of the Withdrawal Rule, reinstatement of the prior 40 C.F.R. § 51.121 regulations and removal of the stay of the regulations with respect to Georgia under subparagraph (s)

of section 51.121, and instructions on Georgia's deadline for submitting a compliant SIP. On the merits, North Carolina challenges the Withdrawal Rule on three grounds: EPA's noncompliance with a policy requiring states to adhere to emission budgets set under the one-hour standard after that standard was abolished; EPA's noncompliance with the mandate in *Michigan v. EPA*, specifically by relying on new data in promulgating the Withdrawal Rule; and EPA's disparate treatment of Georgia as compared to Missouri and other states in the original $NO_x$ SIP Call. Industry, however, challenges North Carolina's standing under Article III of the United States Constitution, maintaining that EPA correctly stated during the rulemaking that Georgia may already be meeting the requirements of the one-hour $NO_x$ SIP Call, *see* Withdrawal Rule, 73 Fed. Reg. at 21,534, and that consequently North Carolina cannot show redressability. We turn to that threshold question.

## II.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court described the Article III injury, causation, and redressability requirements for standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to

merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-61 (alterations in *Lujan*; citations and footnote omitted). "When the suit is one challenging the legality of government action or inaction," and "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else" and "the plaintiff is not himself the object of the government action or inaction he challenges," then "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 562 (emphasis and quotation marks omitted).

North Carolina's situation is similar in many respects to that of Massachusetts in *Massachusetts v. EPA*, 549 U.S. 497 (2000). There the Supreme Court held that Massachusetts had standing to challenge EPA's failure to regulate certain air pollutants, because Massachusetts has "quasi-sovereign interests" in reducing air pollution and a procedural right to challenge EPA under 42 U.S.C. § 7607(b)(1). *Massachusetts v. EPA*, 549 U.S. at 519-21. Like Massachusetts, North Carolina is a state challenging EPA's rule pursuant to 42 U.S.C. § 7607(b)(1) in order to reduce its air pollution, which entitles North Carolina to "special solicitude in our standing analysis." *Massachusetts v. EPA*, 549 U.S. at 520. In addition, "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518.

North Carolina contends that because EPA has recognized ozone as a harmful pollutant (injury), and because EPA recognized in 1998 that ozone from Georgia contributed to North Carolina's non-attainment of the 1997 eight-hour ozone standard (causation), and because re-including northern Georgia

in the NO$_x$ SIP Call would likely reduce Georgia's emissions (redressability), it has established standing. Nonetheless North Carolina acknowledged during oral argument that notwithstanding any "special solicitude" to which it may be entitled as a sovereign state, it must demonstrate Article III standing. We conclude the redressability requirement is not satisfied.

North Carolina contends that it has standing because it is having difficulty meeting federal eight-hour ozone standards due to emissions from Georgia. With its opening brief, *see Sierra Club v. EPA*, 292 F.3d 895, 900-01 (D.C. Cir. 2002), North Carolina submitted an affidavit in support of its standing from the Deputy Director of the Division of Air Quality of the North Carolina Department of Environment and Natural Resources, Sheila Holman. The Holman Affidavit states that North Carolina has areas located close to Georgia that are not attaining the 1997 eight-hour ozone standard, and concludes that NO$_x$ emissions from northern Georgia impact ozone levels in North Carolina, based in part on an attached report by Dr. Saravanan Arunachalam that concluded Georgia's emissions likely contributed significantly to North Carolina's non-attainment in 2005. North Carolina also points out that EPA has recognized that an area's proximity to an emissions source contributes to the effects from that source. *See* Remand Rule, 69 Fed. Reg. at 21,625. North Carolina contends that the Holman Affidavit and the Arunachalam Report establish North Carolina's injury and show that Georgia partially causes this injury. Re-including northern Georgia in the NO$_x$ SIP Call, North Carolina concludes, would reduce Georgia's contributions to North Carolina's ozone, and thus redress North Carolina's injury by helping it meet its federal 1997 and 2008 eight-hour ozone standard obligations, as well as improve its overall air quality.

In challenging North Carolina's standing, industry's objections regarding injury and causation are not well taken. Industry's preliminary contention that North Carolina lacks standing because it discussed its injury[2] in terms of the stayed 1997 and new 2008 eight-hour ozone standards, rather than the $NO_x$ SIP Call's one-hour ozone standard, is unpersuasive. As North Carolina responds, ozone is ozone no matter how it is measured, and if re-including Georgia in the $NO_x$ SIP Call reduces ozone under the one-hour standard, it would presumably reduce ozone under the eight-hour standard as well.

Likewise, industry's position that the Withdrawal Rule could not cause North Carolina injury is unpersuasive. Industry suggests that North Carolina has alleged injuries only from Georgia, rather than from EPA's Withdrawal Rule, and that under *Center for Biological Diversity v. U.S. Department of the Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009), North Carolina has failed to show that its injury results from actions of EPA, rather than the discretionary actions of a third party. But North Carolina, like the state in *Massachusetts v. EPA*, has standing to challenge EPA's failure to regulate a third party because that failure assertedly causes injury, *see also South Coast Air Quality Management District v. EPA*, 472 F.3d 882, 895-96 (D.C. Cir. 2006), and Georgia is not an absent third party because it would not have discretion not to meet the $NO_x$ SIP Call if it were subject to the $NO_x$ SIP Call.

To the extent industry emphasizes that North Carolina's standing burden is heavier both because it is not the object of EPA's Withdrawal Rule, and because no interstate $NO_x$

---

[2] In response to industry's assertion that the reference in the Holman Affidavit to "a cap" is not specific enough to allege injury, North Carolina provided a rebuttal affidavit clarifying that the cap in the affidavit was the cap from the $NO_x$ SIP Call.

emissions are keeping North Carolina from meeting the one-hour ozone standard that was the basis of the $NO_x$ SIP Call, North Carolina persuasively maintains it should not be more difficult for it to establish standing, because its injury, causation, and redressability are more clear than in *Center for Biological Diversity*, in which this court stated a party could not establish standing where causation was based on "speculation" about the discretionary future acts of various entities, 563 F.3d at 479. Rather, what is ultimately dispositive is the showing in submissions by intervenor Georgia Environmental Protection Division ("the Division") that reinstating the $NO_x$ SIP Call for Georgia is not likely to redress North Carolina's injuries.

Preliminarily we note that certain of intervenors' contentions miss the mark. Industry contends that because North Carolina has attained the one-hour ozone standard in the $NO_x$ SIP Call, re-including Georgia in the $NO_x$ SIP Call will not redress North Carolina's injury, but industry and North Carolina appear to be defining "injury" differently: industry contends that the $NO_x$ SIP Call involves injuries only from not meeting the one-hour ozone standard, whereas North Carolina contends that any reduction in $NO_x$ emissions due to the $NO_x$ SIP Call would also help North Carolina meet the eight-hour ozone standards. Industry and the Division next contend that re-including Georgia in the $NO_x$ SIP Call would actually increase emissions by creating excess emission allowances that others could buy to increase their emissions. However, North Carolina responds that Georgia need not opt into the allowance program.

North Carolina's ability to show redressability hinges on showing that including northern Georgia in the $NO_x$ SIP Call would result in reducing emissions from Georgia that significantly contribute to North Carolina's inability to reach attainment under the 1997 NAAQS standard. If lower emissions would result from Georgia's inclusion, then the Withdrawal

Rule is the cause of North Carolina's injury and its injury is redressable by vacating the rule in part with instructions. In reply to intervenors' statements that Georgia's recent $NO_x$ emissions have been below the $NO_x$ emissions cap that would have applied to Georgia under the Remand Rule, North Carolina provides a rebuttal affidavit from Sheila Holman listing Georgia's EGU $NO_x$ emission levels in 2007 and 2008, which North Carolina concludes exceeded the Remand Rule's $NO_x$ emissions cap. Based on the emissions data in North Carolina's reply brief, it reasonably concludes that Georgia's emissions have exceeded the limits of the $NO_x$ SIP Call, and perhaps as well that Georgia's own rules limiting emissions would have a lesser effect on emissions than the $NO_x$ SIP Call would. However, intervenors challenge North Carolina's showing of emission levels. To assist the court in determining whether it has jurisdiction, it permitted the Division to file a supplemental reply on standing, most particularly as it concerns redressability. *See, e.g., Am. Library Ass'n v. FCC*, 401 F.3d 489, 494 (D.C. Cir. 2005).

The Division's sur-reply provides an analysis suggesting that North Carolina's Holman Rebuttal Affidavit reports emissions from the entire state of Georgia rather than only from the northern two-thirds of Georgia that would have been subject to the $NO_x$ SIP Call after the remand in *Michigan v. EPA*. The Division attaches to its sur-reply an affidavit from the Chief of the Georgia Air Protection Branch of the Georgia Environmental Protection Division, James A. Capp, stating that Georgia's EGUs, in the portion of Georgia that would have been subject to the Remand Rule of the $NO_x$ SIP Call, emitted 31,804 tons of $NO_x$ in 2007 and 31,057 tons in 2008. The Capp Affidavit also states that Georgia's $NO_x$ emissions budget under the Remand Rule would have been 29,416 tons. Thus, as industry conceded at oral argument, Georgia's 2007 and 2008 $NO_x$ emissions would have exceeded the Remand Rule's cap if Georgia would

not have been able to use allowances or credits to increase its cap.

However, the Division's sur-reply also provides an analysis indicating that Georgia would have met the Remand Rule's $NO_x$ emissions cap through the use of EPA's compliance supplement pool ("CSP") allowances. EPA has stated in the Federal Register that the CSP is a voluntary provision of the $NO_x$ SIP Call that provides emissions credits to states to allocate in order to cover excess emissions under certain circumstances. *See* $NO_x$ SIP Call, 63 Fed. Reg. at 57,428, 57,493. Under the Remand Rule, EPA would authorize CSP credits to Georgia of up to 10,728 tons of $NO_x$, if Georgia meets the CSP requirements. *See* Remand Rule, 69 Fed. Reg. at 21,629–30, 21,643–44. In its reply brief, North Carolina suggests in a footnote that Georgia's emissions may not qualify for any available CSP credits. However, counsel for EPA advised the court during oral argument that EPA generally has approved a CSP allowance in states subject to the $NO_x$ SIP Call. Oral Arg. Tape at 29:12–29:43. In addition, the Capp Affidavit states that Georgia would have used its CSP allowance to meet the Remand Rule's $NO_x$ emissions cap. During oral argument North Carolina's only response was to question Georgia's ability to qualify for any authorized CSP credits. North Carolina offered no data and cited no statute, regulation, or EPA policy that would bar Georgia from accessing any CSP credits. It appears likely, then, that if Georgia had been subject to the $NO_x$ SIP Call under the Remand Rule, Georgia would have used CSP credits to comply with the $NO_x$ emissions cap and would not have needed to lower its emissions to meet the requirements of the $NO_x$ SIP Call.

The Division's showing in its sur-reply that Georgia intends to use CSP credits to cover its excess emissions thus resolves the question of redressability, for North Carolina can no longer show that vacating the Withdrawal Rule and re-including

northern Georgia in the $NO_x$ SIP Call is likely to redress North Carolina's difficulty in meeting the 1997 NAAQS eight-hour ozone standard. As counsel for North Carolina stated at oral argument, if reinstating Georgia in the $NO_x$ SIP Call would not lower Georgia's emissions, then North Carolina has a standing problem. Accordingly, we dismiss North Carolina's petition for lack of standing.